**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARGARET E MacEACHERN,

    Plaintiff,

v.

CREATIVE SOLUTIONS
GROUP, INC.,

    Defendant.
_____/

Case No. 18-12609

HON. DENISE PAGE HOOD

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT [ECF No. 14]**

**I.    INTRODUCTION**

On August 21, 2018, Plaintiff filed a four-count Complaint alleging that Defendant discriminated against her on the basis of her pregnancy and sex, in violation of Title VII and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"). On May 17, 2019, Defendant filed a Motion for Summary Judgment, and the Motion has been fully briefed. For the reasons that follow, the Court denies the Motion for Summary Judgment.

**II.    STATEMENT OF FACTS**

Plaintiff applied to Defendant for an Administrative Assistant position in March 2018, when Defendant was looking for someone with one to three years administrative

1

experience, whose qualifications included an understanding of Microsoft Office suite and proficiency in Word and Excel. ECF No. 14-2, PgID 76. Plaintiff interviewed for the position and, before Defendant hired her, took a "standardized test" or assessment given by Defendant that is a "profile and covers six cognitive and 10 behavioral traits" and "ranges from comprehension abilities, mathematical applications, basic like word processing, comprehension." ECF No. 17-4, PgID 252-53 (at 9-10); ECF No. 17-5, PgID 275 (at 9).

Defendant hired Plaintiff on April 2, 2018, as a Production/Field Ops Assistant. Plaintiff received compliments from Grace Goodman ("Goodman") (a non-management, administrative employee responsible for training Plaintiff), Rick Roberts ("Roberts") (the Vice President of Field Ops), and other employees. She was told "good job" and "you're doing well" a couple of times a week. ECF No. 17, Ex. A. (at 119-21). Plaintiff was never told she was not meeting expectations or that she could be fired because she was performing so poorly.

Plaintiff told Defendant's employees that she was pregnant on April 20, 2018. *Id.* at 195-96. Rachel McCurtie ("McCurtie") (one of Plaintiff's human resources contacts) treated Plaintiff differently after Plaintiff announced her pregnancy. McCurtie stopped being nice to Plaintiff, was "standoffish," avoided Plaintiff, and stopped answering her questions. *Id*. at 43, 206. McCurtie and Plaintiff sat together

2

at lunch prior to Plaintiff revealing to McCurtie that Plaintiff was pregnant but then McCurtie stopped sitting with Plaintiff. *Id*. at 207-08.

On April 24, 2018, four days after Plaintiff disclosed her pregnancy, Defendant decided to terminate Plaintiff. ECF No. 17, Ex. G. Prior to announcing her pregnancy, Plaintiff was never told she was not performing well, nor were any concerns expressed about Plainitff's ability to do the job. Rather, Plaintiff was consistently praised and told that she was doing good work. *Id.* at 119-21.

Michael Goree ("Goree"), Defendant's head of human resources, was responsible for helping with employee challenges, development, coaching, and decision making. ECF No. 17, Ex. D (at 6). Goree, Roberts and Loretta Stempien ("Stempien") (the Executive Assistant and Administrative Supervisor) did not have any conversations regarding Plaintiff and her performance prior to Plaintiff informing Defendant of her pregnancy, *id.* at 14, 31, and the only time they met about Plaintiff was after Plaintiff informed Defendant she was pregnant. Goree "did not recall" the conversation but did recall that Roberts and Stempien advised him they wanted to terminate Plaintiff. *Id*. at 19.

Goree told Goodman and Stempien to document reasons that supported the decision to terminate Plaintiff. *Id*. at 22, 36. Goodman created "Performance Notes: Meagan MacEachern" on April 26, 2018 and Stempien created "Meagan

3

MacEachern-Admin Staff Observations" on April 26, 2018. ECF No. 17, Ex. H. The purported performance issues regarding Plaintiff documented on April 26, 2018, were the first such documented issues regarding Plaintiff's performance. They were created subsequent to Plaintiff informing Defendant of her pregnancy and Defendant decided it would terminate Plaintiff. ECF No. 17, Ex. H; Ex. C (at 58-59, 61).

Plaintiff had the shortest tenure in the "production assistant" role at 25 days. ECF No. 17, Ex. I. There were two other "production assistants" prior to Plaintiff who were terminated after brief tenures: Suzanne Daher ("Daher") and Lindsay Miller ("Miller"). *Id.* Plaintiff was the only one of those three briefly tenured "production assistants" who was pregnant. (Ex. D, pp. 25-29)( Ex. C, pp. 78-83). Daher was an employee that Defendant claimed was not living up to its expectations, but she was given approximately ten weeks to improve in her role. ECF No. 14, PgID 70. Miller was employed by Defendant for several months, even though she was an alleged "problem" employee who did not seem to grasp Goodman's training. ECF No. 17, Ex. J. Miller was given 13 weeks to try and learn the role. (Ex. I). Plaintiff was given four days to improve and learn the role before Defendant decided to terminate her.

## III.   LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**IV.  ANALYSIS**

## A. Applicable Law

Plaintiff has asserted claims for sex and pregnancy discrimination under both federal Title VII and ELCRA. These federal and state discrimination claims are evaluated under the same substantive standards. See *Latowski v. Northwoods Nursing Ctr.*, 549 Fed.Appx. 478, 483 n. 2 (6th Cir.2013) (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n. 4 (6thCir.2003)). Under the Pregnancy Discrimination Act portion of Title VII, discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as a kind of prohibited sex discrimination. 42 U.S.C. § 2000e(k). Women who are affected by pregnancy, childbirth or related medical conditions are required to be treated the same, for all employment purposes, as other persons not so affected but who are similar in their ability or inability to work. *Id*. ELCRA prohibits an employer from "discriminating against individuals on the basis of sex with respect to a condition of employment[,]" and "discrimination because of a woman's pregnancy is a form of discrimination because of sex." *Haynie v. State*, 468 Mich. 302, 309-10 (2003).

Under both Title VII and ELCRA, a "plaintiff bringing a[n] . . . employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment." *Reeder v. City of Wayne*, 177 F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing

*Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)). In this case, it is undisputed that there is no direct evidence of discrimination. "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

Pregnancy discrimination cases are analyzed through the *McDonnell Douglas* burden shifting analysis. In order to show a prima facie case of pregnancy discrimination under Title VII, Plaintiff must show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment action." *Cline v. Catholic Diocese*, 206 F.3d 651, 658 (6th Cir. 2000). *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (quoting *Cline*, 206 F.3d at 658). It is well-established in the Sixth Circuit that the prima facie requirement in discrimination cases "is not onerous, and poses a burden easily met." *Cline*, 206 F.3d at 660.

If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 805. Once the defendant

offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805. Pretext may be demonstrated if "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Plaintiff must show that the proffered reason is not credible and just a pretext for intentional discrimination. *Cline*, 206 F.3d at 657-58.

**B.     Analysis**

Defendant does not dispute that Plaintiff satisfies the first and third elements required to make out a prima facie case of discrimination. Defendant argues that, as to the second element, Plaintiff was not qualified for the Production/Field Ops Assistant position for which she was hired, as demonstrated by the observations and comments of Defendant's employees that formed the basis for terminating Plaintiff. Plaintiff argues that case law in the Sixth Circuit makes it clear that Plaintiff's burden of showing she was qualified for the job is a very low burden to meet, and the focus should be on plaintiff's objective qualifications to determine whether she is qualified

8

for the job. *Wexler*, 317. F3d at 575.[1]

Plaintiff argues that she was objectively qualified for the administrative role for which she was hired. Plaintiff testified that she had: (1) held similar positions in the past; (2) been using Microsoft Office for many years, ECF No. 17-2, PgID 158-61 (at pp. 19, 31-32); (3) no issues with the phone; and (4) performed such tasks at previous jobs. Plaintiff was college educated and had an associate's degree. ECF No. 17-2, PgID 156 (at p. 11).

Plaintiff's prior employer (who happened to be her father, Duncan MacEachern) testified that Plaintiff did a good job of: (a) answering the phones; (b) setting appointments in his company's customer relationship management program; and (c) assisting with Microsoft Word and Excel when Plaintiff worked there. ECF No. 17-3, PgID 233 (at pp. 39-40). Duncan MacEachern testified that, not only was Plaintiff proficient with Microsoft Office, she was very good at it and did not make mistakes while using Microsoft Office. He also stated that he never had any issues with Plaintiff answering the phones, transferring calls, or being unprofessional to clients. *Id*. at 41-42.

---

[1] The Court notes that it may not consider the employer's justifications for the employee's firing at the prima facie stage. To do so would bypass the burden shifting analysis and deprive plaintiff the opportunity to show that the nondiscriminatory reason was actually pretext designed to mask discrimination. *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 49 (6th Cir. 2011).

Plaintiff also submits that Defendant made her take an "aptitude test" prior to being hired to help determine if she was qualified for the job. Although Defendant does not agree that the test was an "aptitude test," Defendant's employees testified that the test involved comprehension abilities, mathematical problems, and basic word processing and comprehension. ECF No. 17-4, PgID 252-53 (at pp. 9-10). It is undisputed that Defendant hired Plaintiff only after she took the test. ECF No. 17-5, PgID 275 (at p. 9).

The Court concludes that Plaintiff has satisfied the second element of her prima facie case. Although Defendant's argument that her prior employer was her father and the evidence to support her objective qualifications stemmed from the testimony of Plaintiff and her father, that evidence must be accepted as true for purposes of deciding a summary judgment motion. The issue of credibility of Plaintiff and her father is one for the fact finder to decide. And, there is other evidence that supports a finding that Plaintiff objectively was qualified for the position of Production/Field Ops Assistant. Plaintiff was a college graduate, had performed work for her father's company, and she took a test issued by Defendant that involved "comprehension abilities, mathematical problems and basic word processing and comprehension," before she was hired. Plaintiff also has testified that no person at Defendant advised Plaintiff that her performance was deficient prior to terminating her. Taking all of this

evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff was qualified for the position of Production/Field Ops Assistant.

As to the fourth element of a prima facie case (a nexus between her pregnancy and the adverse employment action), the temporal proximity between the date Plaintiff advised Defendant's employees that she was pregnant and the date Plaintiff was terminated were extremely close. Whether the period between the two events was four days (which is what Plaintiff has stated and the Court must assume is accurate for purposes of deciding the present Rule 56 motion) or longer, the fact is that Plaintiff only worked for Defendant for 25 calendar days (approximately three weeks). When a plaintiff is terminated in such close proximity to the event at issue, courts have regularly recognized that the nexus element of the prima facie case has been satisfied. *See, e.g., Asmo v. Keane Inc.*, 471 F.3d 588, 593 (6th Cir. 2006); *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). The Court finds that Plaintiff has satisfied its burden of showing a nexus between her pregnancy and her termination. The Court also concludes that Plaintiff has established a prima facie case of pregnancy and sex discrimination under Title VII and ELCRA.

Defendant contends that it terminated Plaintiff because she failed to adequately meet job expectations, including lacking basic skills with Word and Excel. Defendant

cites numerous instances of allegedly deficient performance by Plaintiff. The Court finds that Defendant has offered a legitimate, nondiscriminatory reason for terminating Plaintiff.

Plaintiff argues that Defendant's proffered reason for her termination is mere pretext. Plaintiff relies on the following things to establish pretext:

- (A) Goree, Roberts, and Stempien never discussed her allegedly deficient performance until after she disclosed she was pregnant;

- (B) There is no documentation of her allegedly deficient performance until April 26, 2018, after she disclosed she was pregnant and Defendant had decided to terminate her;

- (C) No one complained to Plaintiff about her allegedly deficient performance until after she disclosed her pregnancy;

- (D) Plaintiff had a very limited period of time (4 days) to improve her performance, even though two other women who allegedly performed deficiently – but were not pregnant – were afforded months to improve;

- (E) The demeanor of McCurtie, a human resources employee, changed once Plaintiff disclosed she was pregnant, including not talking to Plaintiff or answering Plaintiff's questions; and

- (F) Plaintiff was terminated only four days after disclosing that she was pregnant.

The Court agrees with Plaintiff. The various events set forth in (A) - (F) above constitute evidence that Defendant's proffered reasons for terminating Plaintiff were merely pretextual. Accordingly, there is a genuine dispute of material fact whether Defendant terminated Plaintiff due to her pregnancy, an issue that must be considered

by the factfinder and precludes entry of summary judgment. Defendant's Motion for Summary Judgment is denied.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [ECF No. 14] is DENIED.

s/Denise Page Hood<br>United States District Court Judge

Date: November 1, 2019